1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name Crawford Christopher L
           (Last)     (First)     (Initial)

3    Prisoner Number V98835

4    Institutional Address Kern Valley State Prison P.O Box 5104
5    Delano, CA, 93216

6    ================================================

7    UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF CALIFORNIA

8    Christopher Lee Crawford
     (Enter the full name of plaintiff in this action.)

9    CV 08  2690

10   vs.                                    Case No.
     Athony HedgPeth                        (To be provided by the clerk of court)

11                                          **PETITION FOR A WRIT**
                                            **OF HABEAS CORPUS** W

12

13

14   (Enter the full name of respondent(s) or jailor in this action)     **(PR)**

15

16   ================================================
     <u>Read Comments Carefully Before Filling In</u>

17   <u>When and Where to File</u>

18       You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23       If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

1  Who to Name as Respondent

2       You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6       If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12         (a)   Name and location of court that imposed sentence (for example; Alameda

13            County Superior Court, Oakland):

14  *Alameda County Superior Court,*   *1225 Fallon St Oakland*

15      Court           *94612 Dept 12* Location

16         (b)   Case number, if known *A111634 Super Ct NO148483*

17         (c)   Date and terms of sentence *July 15, 2005*

18         (d)   Are you now in custody serving this term? (Custody means being in jail, on

19            parole or probation, etc.)      Yes *✓*   No _____

20            Where?

21            Name of Institution: *Kern Valley STate Prison*

22            Address: *P.O Box 5104 Delano, Ca 93216*

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  *§ Pen.Code.§187.Subd.(a)).with an enhancement*

27  *For personal use OF a Knife(Pen.Code.§120*

28  *22, Subd.(b)(1)).(1 CT 169-170.)*

PET. FOR WRIT OF HAB. CORPUS     - 2 -

3. Did you have any of the following?

    Arraignment:                      Yes ✓      No _____

    Preliminary Hearing:           Yes ✓      No _____

    Motion to Suppress:            Yes ✓      No _____

4. How did you plead?

    Guilty _____    Not Guilty ✓    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury ✓    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?          Yes _____    No ✓

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment             Yes ✓      No _____

    (b)    Preliminary hearing      Yes ✓      No _____

    (c)    Time of plea            Yes ✓      No _____

    (d)    Trial                   Yes ✓      No _____

    (e)    Sentencing             Yes ✓      No _____

    (f)    Appeal                 Yes ✓      No _____

    (g)    Other post-conviction proceeding    Yes ✓      No _____

8. Did you appeal your conviction?          Yes ✓      No _____

    (a)    If you did, to what court(s) did you appeal?

    Court of Appeal            Yes ✓      No _____

    Year: 2007    Result: Reversal 2nd Degree Murder

    Supreme Court of California    Yes ✓      No _____

    Year: 2007    Result: Denied

    Any other court             Yes _____      No _____

    Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

petition?                                           Yes __✓__    No____

(c)    Was there an opinion?                        Yes ____    No__✓__

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                                    Yes ____    No__✓__

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes ____    No__✓__

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

    I.    Name of Court: _____

       Type of Proceeding: _____

       Grounds raised (Be brief but specific):

       a._____

       b._____

       c._____

       d._____

       Result: _____Date of Result:_____

    II.    Name of Court: _____

       Type of Proceeding: _____

       Grounds raised (Be brief but specific):

1   a._____

2   b._____

3   c._____

4   d._____

5   Result: _____Date of Result:_____

6   III.   Name of Court: _____

7   Type of Proceeding: _____

8   Grounds raised (Be brief but specific):

9   a._____

10  b._____

11  c._____

12  d._____

13  Result: _____Date of Result:_____

14  IV.   Name of Court: _____

15  Type of Proceeding: _____

16  Grounds raised (Be brief but specific):

17  a._____

18  b._____

19  c._____

20  d._____

21  Result: _____Date of Result:_____

22  (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                              Yes  ✓   No____

24  Name and location of court: *Superior Court of Alameda*

25  B. GROUNDS FOR RELIEF *1225 Fallon St. Oakland, Ca 93216*

26        State briefly every reason that you believe you are being confined unlawfully.  Give facts to

27  support each claim.  For example, what legal right or privilege were you denied?  What happened?

28  Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One: Court violated Appellant's Sixth Amend-

6  ment right to Cross-examination, Ray Bain

7  Supporting Facts: Solomon Wollack hasn't given petitioner

8  Transcript's. I have written Mr Wollack and

9  he, said when he is Finish with Appeal I will

10  receive Transcripts, Today is 5·21·08, I don't have

11  them, Claim Two: Appellant's Conviction First Degree Murder

12  violates Fourteenth Amendment, insufficient Evd.

13  Supporting Facts: Same as claim 1, Solomon Wollack

14  hasn't given petitioner Transcript's

15  _____

16  _____

17  Claim Three:_____

18  _____

19  Supporting Facts:_____

20  _____

21  _____

22  _____

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  Court committed Reversible error, By Failing to in-

26  struct, Jury They Should view evidence OF Appellants

27  Pre-Offense Statement with Caution, Solomon Wollack

28  Appellate attorney, didn't Present ground's From

reply Brief,

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1  Olden v Kentucky (1988) 488 U.S. 227...15
2  People v Anderson (1968) 70 Cal. 2d 15...5,11
3  People v Combs (2004) 34 Cal. 4th 821...5
4  People v Cooper (1991) 53 Cal. 3d 771...13
5  People v Crittenden (1994) 9 Cal. 4th 83...5
6  People v Frye (1998) 18 Cal. 4th 894...13
7  People v Holt (1944) 25 Cal. 2d 59...5
8  People v Johnson (1980) 26 Cal. 3d 557...10
9  People v Kraft (2000) 23 Cal. 4th 978...4
10 People v Partida (2005) 37 Cal. 4th 428...12
11 People v Perez (1992) 2 Cal. 4th 1117...5
12 People v Stress (1988) 205 Cal. App. 3d 1259...5
13 People v Thomas (1992) 2 Cal. 4th 489...5

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    Chapman V CaliFornia (1967) 386 U.S 18 Davis V Alaska

5    (1974) 415 U.S Delaware V Van Arsdall (1986) 475 U.S

6    673 Jackson V Virginia (1979) 493 U.S.307 Miranda V Arizona

7    (1966) 384 U.S 436
     Do you have an attorney for this petition?                     Yes_____     No _✓_

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on  5·21·08                    Christopher Lee Crowford

14              Date                              Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

# EXHIBIT

1. Petitioner has repeatedly asked Appellate
2. Attorney Solomon Wollack P.O. Box 23316
3. Pleasant hill Ca 94523 tel. (925) 671-2501
4. Fax (925) 940-9678 to Send transcript's, so
5. I can have an effective appeal. Solomon
6. Wollack has written to my self and said
7. either I Pay For them or he will Send them
8. When appeal is over, Petitioner has told
9. mr. Solomon that I am Indigent and cann-
10. ot Pay For them. He wouldn't even Send
11. transcripts after, He was through with the
12. Case. Today 5.21.08 and My Deadline is
13. may 23, 2008. Petitioner is asking the Court
14. to Consider Habeas Corpus.
15.
16. I was told by a inmate that I can File a
17. motion. Kern Valley State Prison has been
18. on lock Down For over 8 month's. I have
19. written a 602 regarding, My Deadline, and
20. I am Finally going to the Library may 18,
21. through 19th 20 For 30-45 minutes. I am Pray-
22. ing the Court Consider Late Petition
23. I have been ignored to the law regarding
24. My Appeal. My Grade point average is 6.2
25. and I am Barely comprehending My legal
26. work. Petitioner is also innocent of these
27. Charges ineffective assistance Of Trial, Appellate
28. counsel, Prosecution misconduct

Sincerely
Christopher Lee Crawford

Court of Appeal, First Appellate District, Div. 2 - No. A111634
**S151890**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

CHRISTOPHER LEE CRAWFORD, Defendant and Appellant.

The petition for review is denied.

SUPREME COURT
**FILED**

MAY 2 3 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

I also reviewed the *Marsden* hearing, which was part of the original record on appeal. At a *Marsden* hearing, the defendant must demonstrate either that his attorney has not performed competently or that there has been a complete break-down in the attorney-client relationship so that it has become impossible for the attorney to continue zealously defending the client's interest. The court found that you had not made either of these showings and I do not believe we have any basis for challenging the judge's finding on appeal.

*Marsden* issues are almost impossible to win on appeal. The trial judge is the one who has more intimate knowledge of what exactly has gone on at trial and, for this reason, the Court of Appeal will almost always defer to the judge's discretion in ruling upon a *Marsden* motion. Although there are thousands of published decisions on *Marsden* issues, about the only time the Courts of Appeal ever reverse the judge's ruling is when the judge fails to give the defendant a full and adequate hearing on his *Marsden* motion. You did have a full and adequate hearing, so I do not see any grounds for appealing the judge's findings at that hearing.

**10.    Copy of record on appeal**

You have asked me to send you a complete copy of the record on appeal.

As an indigent defendant, you are entitled to one free copy of the record on appeal. However, as I explained in my very first letter to you (dated December 6, 2005), that copy goes to your attorney until the appeal process is completed. When the appeal is completed and my appointment ends, the Rules of Professional Responsibility require me to send my complete copy of the record to you. Therefore, you will get your complete copy of the record when the case is over. Until then, you do have a right to obtain a copy of the record, but you would be required to pay for it out of your own pocket.

I hope this letter has cleared up all of your questions. Once the Court of Appeal issues its decision, I will of course send you a copy of that decision. At that time, we can discuss what happens next – which, of course, will depend upon how the case turns out.

Very truly yours,

Solomon Wollack

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PETITION FOR REVIEW TO EXHAUST STATE REMEDIES . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

REASONS FOR GRANTING REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 3

LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     APPELLANT'S CONVICTION FOR FIRST DEGREE
          MURDER VIOLATES THE FOURTEENTH
          AMENDMENT'S DUE PROCESS CLAUSE
          BECAUSE THERE WAS LEGALLY INSUFFICIENT
          EVIDENCE TO SHOW THAT HE ACTED WITH
          PREMEDITATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    THE TRIAL COURT VIOLATED APPELLANT'S
          SIXTH AMENDMENT RIGHT TO CROSS-
          EXAMINATION BY REFUSING TO ALLOW
          EVIDENCE OF FREEMAN BAIN'S PAST LIES TO
          THE POLICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          A.    The relevant facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          B.    Bain's previous lies and material omissions to the
               police were relevant and admissible under the
               Sixth Amendment's confrontation clause . . . . . . . . . . . 12

          C.    The trial court's error was not harmless beyond a
               reasonable doubt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

WORD COUNT CERTIFICATE ............................. 20

EXHIBIT A ........................................... 21

# TABLE OF AUTHORITIES

## CASES

*Chapman v. California* (1967)
386 U.S. 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Davis v. Alaska* (1974)
415 U.S. 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Delaware v. Van Arsdall* (1986)
475 U.S. 673 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Jackson v. Virginia* (1979)
443 U.S. 307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Miranda v. Arizona* (1966)
384 U.S. 436 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Olden v. Kentucky* (1988)
488 U.S. 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Anderson* (1968)
70 Cal.2d 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*People v. Combs* (2004)
34 Cal.4th 821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Cooper* (1991)
53 Cal.3d 771 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Crittenden* (1994)
9 Cal.4th 83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Frye* (1998)
18 Cal.4th 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Holt* (1944)
25 Cal.2d 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Johnson* (1980)
    26 Cal.3d 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Kraft* (2000)
    23 Cal.4th 978 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People v. Partida* (2005)
    37 Cal.4th 428 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Perez* (1992)
    2 Cal.4th 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Stress* (1988)
    205 Cal.App.3d 1259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Thomas* (1992)
    2 Cal.4th 489 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATUTES

Evidence Code

    Section 1101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Penal Code

    Section 187, subd. (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Section 12022, subd. (b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## CONSTITUTIONS

United States Constitution

    Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 11-12, 15

    Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

## OTHER AUTHORITIES

California Rules of Court

Rule 8.500(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rule 8.504(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rule 8.508  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CALJIC Instructions

No. 8.20  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| **THE PEOPLE,** ] | NO. S_____ |
| **Plaintiff and Respondent,** ] | |
| ] | **Court of Appeal** |
| **v.** ] | **No. A111634** |
| ] | |
| **CHRISTOPHER LEE CRAWFORD,** ] | **(Alameda County** |
| ] | **Super. Ct. No. 148483)** |
| **Defendant and Appellant.** ] | |
| ] | |

## PETITION FOR REVIEW TO EXHAUST STATE REMEDIES

TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE OF THE STATE OF CALIFORNIA, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT:

Appellant Christopher Lee Crawford hereby petitions this Honorable Court for review following the unpublished decision of the Court of Appeal, First Appellate District, Division Two, filed in that Court on March 15, 2007, and hereafter attached as Exhibit A.  No petition for rehearing was filed.

\\

\\

\\

-1-

## ISSUES PRESENTED FOR REVIEW

I.    Did appellant's conviction for first degree murder violate the Fourteenth Amendment's due process clause because there was legally insufficient evidence to show that he acted with premeditation?

II.    Did the trial court violate appellant's Sixth Amendment right to confrontation and cross-examination by refusing to allow defense counsel to impeach a critical prosecution witness with evidence of his past lies to the police?

## STATEMENT OF THE CASE

On October 26, 2004, the Alameda County District Attorney filed a superior court information charging appellant Christopher Lee Crawford with murder (Pen. Code, § 187, subd. (a)), with an enhancement for personal use of a knife (Pen. Code, §12022, subd. (b)(1)).  (1 CT 169-170.)

A jury was empaneled on July 8, 2005.  (2 CT 331.)  On July 15, 2005, the jury returned its verdict, finding appellant guilty of first degree murder and finding that he personally used a knife.  (2 CT 415; 5 RT 853-854.)

The court entered judgment on September 23, 2005, sentencing appellant to 25 years to life on the murder count, plus one additional year due to the knife enhancement.  (2 CT 467; 6 RT 23.)

-2-

Appellant filed a timely notice of appeal on September 23, 2005. (2 CT 469.)

## STATEMENT OF FACTS

For the purposes of this petition for review, appellant adopts the facts set forth in the "Statement of Facts" section of the Court of Appeal's opinion. (Opinion, pp. 2-10.)  However, appellant will review these and other background facts as they become relevant to arguments which follow.

## REASONS FOR GRANTING REVIEW

Appellant brings this petition solely to exhaust state remedies for federal habeas corpus purposes. (Cal Rules of Court, rule 8.508.)  This case presents no grounds for review under rule 8.500(b) of the California Rules of Court.

For exhaustion purposes, appellant respectfully requests that this Court grant review to determine:  (1) whether appellant's first degree murder conviction violates the Fourteenth Amendment's due process clause because there was legally insufficient evidence of premeditation; and (2) whether the trial court violated appellant's Sixth Amendment right to cross-examination by refusing to allow his attorney to question a critical defense witness about his past lies to the police.

\ \

## LEGAL DISCUSSION

## I.

## APPELLANT'S CONVICTION FOR FIRST DEGREE MURDER VIOLATES THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE BECAUSE THERE WAS LEGALLY INSUFFICIENT EVIDENCE TO SHOW THAT HE ACTED WITH PREMEDITATION.

The Fourteenth Amendment's guarantee of a conviction based on proof beyond a reasonable doubt "requires more than simply a trial ritual." (*Jackson v. Virginia* (1979) 443 U.S. 307, 316-317.) It requires that the fact-finder "rationally apply" the reasonable doubt standard in evaluating the facts before it. (*Id.* at p. 317.) Thus, when a jury convicts a defendant "even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," the verdict offends the Fourteenth Amendment's due process clause. (*Jackson*, at p. 319.)

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – evidence that is reasonable, credible and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) In making this determination, the court must indulge all reasonable inferences in support of

-4-

the judgment.  (*People v. Crittenden* (1994) 9 Cal.4th 83, 139; *Jackson v. Virginia, supra,* 443 U.S. at pp. 317-320.)

Here, the jury convicted appellant of first degree murder – that is, willful, deliberate, and premeditated murder.  To kill deliberately and with premeditation requires more than just an intentional killing.  (*People v. Holt* (1944) 25 Cal.2d 59, 87; *People v. Stress* (1988) 205 Cal.App.3d 1259, 1269.) It requires that the intent be "formed upon a *pre-existing* reflection" and that it be the result of "careful thought and weighing of considerations."  (*People v. Anderson* (1968) 70 Cal.2d 15, 26, original italics; see also CALJIC No. 8.20.)

In *Anderson, supra,* 70 Cal.2d at pp. 26-27, this Court identified three categories of evidence which are relevant to the issues of premeditation and deliberation:  (1) planning activity; (2) motive evidence; and (3) evidence about the manner of the killing.  (See also *People v. Perez* (1992) 2 Cal.4th 1117, 1125.)  While these categories of evidence are neither exclusive nor dispositive (*People v. Combs* (2004) 34 Cal.4th 821, 850), they do provide an analytical "framework to assist reviewing courts in assessing whether the evidence supports an inference that the killing resulted from preexisting reflection and weighing of considerations."  (*People v. Thomas* (1992) 2 Cal.4th 489, 517.)

-5-

In appellant's case, the only inference supported by the evidence was that of a brief, sudden flare-up which culminated in appellant's fatal stabbing of Smith. Contrary to the prosecutor's argument, there was nothing about the manner of killing which suggested prior calculation. (See 5 RT 761.) As compared to other homicides, the one here was not especially brutal, consisting of but a single stab wound to the neck. While the prosecutor cited the location of the wound as evidence of premeditation – since a stab to the neck would likely be fatal (5 RT 761) – there was no evidence that appellant possessed any special medical skill or training such that he would know this to be the case.

Moreover, on the day Smith was killed, appellant and Smith were, for the most part, getting along fine. The two showed up at the San Leandro plaza together, left the plaza together, and peaceably rode the bus together to Oakland. (2 RT 376-377, 383-384; 3 RT 458-459.) Once in Oakland, they began walking up 100th Avenue – still together and still without any sign of a conflict. (2 RT 384-386, 388, 394.) At some point, Smith and appellant approached a passing van and a conversation ensued at the van's driver's side window. (2 RT 386-388.) After the conversation ended, appellant and Smith continued walking up the street – with still no signs of any disagreement. (2 RT 394; 3 RT 470.) Moments later, appellant suddenly became "kind of loud" and appeared to be upset with Smith. (2 RT 390-391, 393.) The next thing

-6-

that happened was that Freeman Bain came around the corner to find Smith down on the ground in a puddle of blood, with appellant standing over him holding a knife in his hand. (2 RT 395-396.)

Far from showing premeditation, appellant's stabbing of Smith had all the earmarks of a sudden, almost random, flare-up which led appellant to grab Smith's knife from him, then stab him in the neck. By all appearances, appellant and Smith were on perfectly friendly terms until an argument arose in the minutes before the killing. Likewise, by all appearances, appellant immediately regretted the stabbing for he ran around the block trying to find help for his injured friend. (2 RT 342-344, 363.) Such actions are far more indicative of a rash, impulsive killing than of one committed after reflection and deliberation. Had appellant premeditated his actions, it stands to reason he would have quickly fled the scene rather than staying in the area and looking for help.

Similarly, it also stands to reason that one who premeditated his actions would have stabbed Smith in a dark alley where no one was around. Appellant's crime occurred right across the street from someone's house at a time when he knew that Freeman Bain was just around the corner. Furthermore, appellant brought no weapon with him; instead he apparently had to seize the knife from Smith's own hands in order to commit the stabbing.

-7-

Such actions are hardly consistent with a person who took Smith to Oakland in order to kill him.

Finally, another factor which was at odds with a finding of premeditation was appellant's insistence that Smith had suffered a heart attack when it was plain to all that he had been stabbed. The prosecutor placed considerable emphasis on this evidence at trial – repeatedly bringing it up during closing argument. (5 RT 752, 756-759, 768-773, 781-783.) In fact, however, a person who had planned out his actions ahead of time would no doubt have come up with a version of events which explained the stab wound. Appellant's explanation – that Smith had a heart attack – was far more indicative of someone who had acted impulsively and was hurriedly searching to come up with a plausible explanation.

In arguing that appellant acted with premeditation, the prosecutor cited Freeman Bain's testimony that appellant told him he would stick anyone who "pisses him off" and that Oakland was the best place to get away with sticking someone. (5 RT 779-780.) These statements did not constitute substantial evidence of premeditation, as they were not directed at any person in particular. Appellant did not tell Bain that Smith was someone who "pisse[d] him off" and, even in general terms, he did not indicate that he actually had a plan in place to stick somebody – in Oakland or anyone else. To the contrary,

-8-

his statements appear to have been nothing more than empty bluster. Appellant was apparently given to such bluster, for Bain himself testified that appellant had threatened him in the past, yet there was no evidence that appellant had ever tried to follow up on any of those threats. (3 RT 491-492.)

Moreover, there is no evidence that appellant "took" Smith to Oakland. Indeed, the evidence suggests just the opposite. It was Smith who wanted to go to Oakland to buy crack cocaine and it was appellant who was seemingly just tagging along, as he had done in the past with Bain. (3 RT 447.) Bain testified that he occasionally took appellant with him so that he would not be hassled after buying his narcotics. (3 RT 447.) In exchange, he would buy appellant "a beer or two." (3 RT 447.)

As evidence of motive, the prosecutor pointed to Carlos Sotelho's testimony that, while at the plaza, appellant became angry when Smith refused to let him handle the knife. (3 RT 558.) However, Sotelho's testimony made clear that appellant's anger subsided in a matter of minutes. Sotelho explained that appellant angrily asked for the knife three or four times in rapid succession but, when he didn't get his way, he dropped the subject altogether. (3 RT 558, 566.) There was no evidence to suggest that appellant harbored a lingering anger toward Smith; in fact, he and Smith left the plaza together, then took the bus together to Oakland without any further incidents along the way.

-9-

Ultimately, the prosecutor's theory of premeditated murder came down to Susan Fehn's testimony that, two weeks before the incident, appellant said that Smith owed him $10 and that he intended to stab Smith the next time he saw him. (3 RT 572-573; See 5 RT 763, 779.) However, even Fehn herself testified that she did not take appellant's comment seriously because he was "loaded" at the time and she did not know him to be violent. (3 RT 573.)

Furthermore, appellant's pre-offense statements should not be viewed in isolation but must be counter-balanced against the other evidence. When conducting a sufficiency of the evidence analysis, this court is not limited to considering only that evidence which supports the verdict. (*People v. Johnson* (1980) 26 Cal.3d 557, 577.) Rather, it must consider the entire record. (*Id.* at p. 576.)

Viewing the evidence in the light most favorable to the prosecution, it shows only that appellant was volatile and temperamental and that he occasionally made outlandish threats on which he never acted. However, to find that appellant committed premeditated murder, the jury would have to believe that he went to Oakland with a plan to get the knife out of Smith's hand, stab him with it, and then wait around in the area for the police to show up, all the while pretending to seek help for his dying friend. The jury would also have to believe that appellant did all of these things because of a $10 debt

-10-

which arose nearly two weeks before or because Smith wouldn't let him touch the knife earlier in the evening. Such findings are, quite simply, wholly unreasonable.

In short, there was no substantial evidence from which a reasonable jury could have found that appellant acted with premeditation and deliberation. Accordingly, this court must reduce his first degree murder conviction to second degree murder. (*People v. Anderson, supra,* 70 Cal.2d at p. 23.)

## II.

### THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CROSS-EXAMINATION BY REFUSING TO ALLOW EVIDENCE OF FREEMAN BAIN'S PAST LIES TO THE POLICE.

#### A.    The relevant facts

Defense counsel tried to cross-examine Freeman Bain about two past incidents in which Bain changed his story to the police. (3 RT 489-490.) After a prosecution objection, the court held a bench conference followed by an on-the-record discussion outside the jury's presence. (3 RT 489-490, 496-502.) Defense counsel stated that the first of the two incidents arose out of a physical altercation in which Bain wound up pulling a knife on the other person. (3 RT 498.) When later questioned by the police, Bain initially failed to mention the knife but did so only after further police questioning. (3 RT 498.) In the second incident, the police were called to investigate a domestic

-11-

dispute between Bain and his girlfriend. (3 RT 498.) When the police asked Bain if he was under the influence of any drugs, Bain lied and said he wasn't. (3 RT 498.) Only later did he admit that he had smoked rock cocaine. (3 RT 498.)

Defense counsel advised the court that he was offering the past incidents as character and habit evidence "and also under [Evidence Code section] 1101." (3 RT 499-500.) The court refused to allow the cross-examination, finding it "too peripheral."[1] (3 RT 501.)

### B. Bain's previous lies and material omissions to the police were relevant and admissible under the Sixth Amendment's confrontation clause.

The Sixth Amendment to the United States Constitution guarantees an accused the right to confront the witnesses against him. The primary purpose of this provision is "to secure for the opponent the opportunity of cross-examination." (*Davis v. Alaska* (1974) 415 U.S. 308, 315-316, italics omitted.)

---

[1] Although defense counsel offered the evidence under state law principles, the court undertook an analysis identical to the one required under the Sixth Amendment's confrontation clause. Since a federal constitutional violation was the consequence of the trial court's erroneous evidentiary ruling, the federal issue has been preserved for appeal. (*People v. Partida* (2005) 37 Cal.4th 428, 436-439.)

-12-

The right to confrontation is not absolute and, "[w]ithin the confines of the confrontation clause, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance." (*People v. Frye* (1998) 18 Cal.4th 894, 946; see also *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) At the same time, a defendant states a federal confrontation violation where the trial court prohibits otherwise admissible cross-examination which "'might reasonably have produced a significantly different impression of [the witness's] credibility.'" (*People v. Cooper* (1991) 53 Cal.3d 771, 817, quoting *Van Arsdall*, at p. 680.)

Here, the trial court prohibited defense counsel from asking Freeman Bain about two incidents in which he lied or omitted material information during police investigations. But, contrary to the trial court's finding, there was nothing "peripheral" about the fact that Freeman Bain had been less than candid with the police during two previous incidents in which he was suspected of criminal wrongdoing. During closing argument, the defense attempted to argue that Bain embellished his story because he had been in the interview room a long time and believed he would have to give someone up or possibly be charged himself. (5 RT 805-807.) This theory dovetails perfectly with the evidence of Bain's previous misstatements for, in each of

-13-

those previous situations, Bain apparently lied or omitted facts out of an effort to save himself from criminal prosecution. However, due to the court's evidentiary ruling, defense counsel was unable to bring this crucial evidence to the jury's attention.

Moreover, there was considerable evidentiary support for the defense's theory. During the police investigation of Jeff Smith's murder, Bain went through two iterations of his account without mentioning that he'd seen appellant standing over Smith's body, holding a knife. (3 RT 483-484, 486-489.) Furthermore, as in the previous knife incident and the domestic dispute, Bain had good reason to believe that the police were viewing him as a suspect in this case. After all, the police woke Bain in the middle of the night (3 RT 485), kept him in the interview room for more than four hours (4 RT 676, 685), read him his *Miranda* rights[2] (3 RT 487-488; 4 RT 666-667), and declined to leave the interview room even after he'd twice given his account. (3 RT 483-484.) Indeed, at trial, Bain even admitted that it crossed his mind the police might have regarded him as Smith's killer. (3 RT 487-488.)

Because of the close factual similarity between Bain's previous lies and omissions to the police and his omissions in this case, the exclusion of this impeachment evidence was not mere state law error, but one which could well

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

have affected the jury's ability to evaluate Bain's credibility. Consequently, by prohibiting the defense from eliciting this information during cross-examination, the trial court violated appellant's Sixth Amendment right to confrontation.

### C.    The trial court's error was not harmless beyond a reasonable doubt.

When the trial court unconstitutionally curtails a defendant's ability to impeach and cross-examine a witness, the error is subject to harmless error analysis under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24. (*Olden v. Kentucky* (1988) 488 U.S. 227, 232.) In this regard, "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error is harmless beyond a reasonable doubt." (*Olden*, at pp. 232-233, quoting *Delaware v. Van Arsdall, supra*, 475 U.S. at p. 684.) This inquiry turns on such factors as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case. (*Olden*, at p. 233; *Van Arsdall*, at p. 684.)

-15-

Here, Freeman Bain's testimony was critical on the issue of premeditation. Without Bain's testimony, it would have been difficult for the prosecutor to reconcile his theory of premeditated murder with the fact that, in the hours leading up to the killing, appellant and Smith were on friendly enough terms that appellant decided to accompany Smith to Oakland. As a result of Bain's testimony, however, the prosecutor was able to portray the trip to Oakland as a key part of appellant's overall plan since, according to Bain, appellant believed Oakland was a place where he could kill someone and get away with it.

Moreover, Bain's testimony also helped the prosecutor in finding a motive for the killing. Both Susan Fehn and Carlos Sotelho testified that appellant had recently been angry with Smith. According to Fehn, appellant was angry over a $10 debt (3 RT 572-573); Sotelho, on the other hand, said that appellant had become mad when Smith would not let him handle the knife at the San Leandro plaza. (3 RT 557-559.)  It is doubtful that either of these two incidents, standing alone, would have provided convincing evidence of motive. To the contrary, it borders on the outlandish to suggest that appellant would have stabbed his friend to death over a $10 debt or a rebuked request to see a knife. However, Bain's testimony supplied the additional piece to the prosecution's puzzle, for he testified that appellant spoke of sticking anyone

-16-

who "pisses him off." Such testimony lent much more credence to the idea that appellant might have stabbed Smith to death over two thoroughly petty disputes. As the prosecutor argued, "He threatens to stick anyone who pisses him off, well Ms. Fehn said he was pissed off at Jeff that night." (5 RT 779.)

Finally, the confrontation error not only went to the issue of deliberation and premeditation; it also affected the jury's verdict on the entire case. It was Bain, after all, who testified that he saw appellant standing over Smith's fallen body with a knife in his hand. (2 RT 395-396.) Absent this testimony, the sole evidence of appellant's guilt came from his drunken statement that he planned to kill Smith and his post-arrest statements that Smith had suffered a heart attack. Without any evidence to actually link appellant to a weapon, the jury could easily have harbored a reasonable doubt as to whether the remaining evidence was sufficient to prove appellant's identity as the murderer.

Despite the importance of Bain's testimony – both to the issues of guilt and the degree of murder – there was not a single witness who corroborated appellant's pre-offense statements and there was not a single witness who corroborated that appellant had a knife in his hand in the moments following Smith's murder. In fact, Athalia Goldsby contradicted Bain's contention, for, at the time Bain purported to see appellant with a knife in his hand, Goldsby was already outside, calling the police on her cell phone. (2 RT 395-398.)

-17-

Goldsby testified that she never saw appellant holding anything and that, by the time she arrived at her front gate, appellant was already running around trying to find help for Smith. (2 RT 342-343, 359-360, 365.)

Without the ability to bring in Bain's previous lies to the police, there was little that defense counsel could do to undermine Bain's credibility. Perhaps even more importantly, the prohibited cross-examination prevented defense counsel from fully developing his theory that Bain changed his story because he was worried about saving himself from prosecution. The fact that Bain had a history of doing the same thing in similar situations was the strongest possible evidence to support the defense's argument. Without this evidence, the defense was left to argue a theory that was essentially speculative.

In short, the evidence of Bain's previous lies to the police was strongly probative on both the issues of guilt and premeditation. Absent this evidence, defense counsel was unable to meaningfully impeach Bain's credibility and unable to develop his theory that Bain pointed the finger at appellant in order to deflect suspicion from himself. Accordingly, appellant's conviction should be reversed and the case remanded for a new trial.

\ \

\ \

-18-

## WORD COUNT CERTIFICATE
### (Cal. Rules or Court, rule 8.504(d)(1))

I, Solomon Wollack, appointed counsel for Christopher Lee Crawford, hereby certify, pursuant to rule 8.504(d)(1) of the California Rules of Court, that I prepared the foregoing petition for review on behalf of my client, and that the word count for this petition is 3,834 words, which does not include the tables, the Court of Appeal's opinion, or this certificate. The petition therefore complies with rule 8.504(d)(1), which limits a petition for review to 8,400 words. I certify that I prepared this document in Wordperfect 10 and that this is the word count Wordperfect generated for this document.

Dated this 14th day of April, 2007

By: _Solomon Wollack_
Solomon Wollack

-20-

## PROOF OF SERVICE

I declare that I am over the age of 18, not a party to this action and my business address is P.O. Box 23316, Pleasant Hill, California 94523. On the date shown below, I served the within:

## PETITION FOR REVIEW TO EXHAUST STATE REMEDIES

to the parties on the attached service list by:

    ___    Causing a true copy thereof to be delivered to the office of each party shown below at the address indicated by leaving the same with a person apparently in charge and over the age of 18 years.

    _X_    Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Pleasant Hill, California, addressed as indicated on the attached service list:

    I declare under penalty of perjury the foregoing is true and correct. Executed this 14th day of April, 2007, at Pleasant Hill, California.

Solomon Wollack

Christopher Lee Crawford V98835
Kern Valley State Prison
P.O. Box 5104
Delano, Ca 93216

Kern Valley State Prison
Facility D, Building 3

KVSP LEGAL MAIL

(Confidential Legal Mail)

RECEIVED

MAY 27 2008

United States District Court For
the Northern District
U.S. Courthouse
450 Golden Gate Avenue
San Francisco, Ca 94102-3483